UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



BOBBY VIVERETTE,

    Plaintiff,

v.                            CASE NO.: 3:16-cv-415 HTW-LRA

BLUESTEM BRANDS INC., d/b/a    **DEMAND FOR TRIAL BY JURY**
FINGERHUT,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Bobby Viverette, by and through the undersigned counsel, sues Defendant, Bluestem Brands Inc., d/b/a Fingerhut, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

1. The TCPA was enacted to prevent companies like Bluestem Brands Inc., d/b/a Fingerhut from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

1

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). *See Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as the violations described in this Complaint occurred in this District and Defendant transacts business within this District.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Mississippi, residing in Scott County, Mississippi.

9. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant is a corporate entity responsible for attempting to collect on an alleged debt from Plaintiff.

11. Defendant is a corporation with its principal place of business located at 6509 Flying Cloud Drive, Suite 300, Eden Prairie, MN 55344 and which also conducts business in the State of Mississippi.

12. Plaintiff is the subscriber, regular user and carrier of the cellular telephone numbers at issue, (769) XXX-2003 (hereinafter "cellular telephone") and was the called party and recipient of Defendant's calls.

13. Defendant intentionally, knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone, from approximately October of 2015 through present, with such frequency as can reasonably be expected to harass, in an effort to collect an alleged debt.

14. Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" (hereinafter "Autodialer") which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

15. Furthermore, each of the calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16. Beginning in or about October of 2015, Defendant began bombarding Plaintiff's cellular telephone in an attempt to collect on an alleged debt.

17.     Upon receipt of the calls, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone number: (844) 485-3204.

18.     Upon receipt of a call from Defendant in or about October of 2015, Plaintiff answered the call, received Defendant's prerecorded message, held on the line to be connected to a live agent/representative and informed the agent/representative of Defendant to stop calling his cellular telephone, their incessant calls were harassing him, and demanded Defendant to cease all calls to his aforementioned cellular telephone, therefore, unequivocally revoking any previously perceived expressed consent to be called using Defendant's Autodialer, predictive dialer, prerecorded message or artificial voice.

19.     During the aforementioned phone conversation with Defendant's agent/representative, Plaintiff explicitly revoked any expressed consent Defendant may have had for placement of telephone calls to Plaintiff's cellular telephone by the use of an Autodialer or pre-recorded or artificial voice.

20.     Each subsequent call Defendant made to Plaintiff's cellular telephone was done so after he revoked consent and without the "expressed consent" of Plaintiff.

21.     Each subsequent call Defendant made to Plaintiff's cellular telephone was knowingly and willfully placed to his cellular telephone without expressed consent.

22.     Despite Plaintiff informing Defendant to stop calling on multiple occasions, Defendant's calls to Plaintiff's cellular telephone continued.

23.     Defendant has called Plaintiff on his cellular telephone in excess of one hundred fifty (150) times since October of 2015 in an attempt to collect an alleged debt.

24. Due to the volume of calls received, Plaintiff was unable to maintain a fully contemporaneous call log of each and every call Plaintiff received from Defendant; however, the following is a sampling of the calls Plaintiff received:

    i. One call on October 31, 2015;

    ii. One call on November 2, 2015;

    iii. One call on November 3, 2015;

    iv. Four calls on November 4, 2015;

    v. Two calls on November 6, 2015;

    vi. Two calls on November 9, 2015;

    vii. One call on November 10, 2015;

    viii. Two calls on November 11, 2015;

    ix. One call on November 12, 2015;

    x. One call on November 14, 2015;

    xi. One call on November 15, 2015;

    xii. Two calls on November 16, 2015;

    xiii. One call on November 17, 2015;

    xiv. One call on November 18, 2015; and

    xv. One call on November 23, 2015.

25. The calls from Defendant continued, on average, once a day from October of 2015 to present.

26. Defendant has, or should be in possession and/or control of, call logs, account notes, autodialed reports and/or other records that detail the exact number of all calls made to Plaintiff.

27. Additionally, Defendant has texted Plaintiff on the aforementioned cellular telephone in excess of ten (10) times since October of 2015 in an attempt to collect an alleged debt.

28. Despite actual knowledge of their wrongdoing, Defendant continued its campaign of abuse, calling Plaintiff despite not having Plaintiff's expressed permission to call his cellular telephone number.

29. Defendant has a corporate policy to use an Autodialer or a pre-recorded or artificial voice, and to make autodialed calls just as it did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or Defendant, to permit the removal of Plaintiff's cellular number.

30. Defendant's corporate policy and procedures are structured as to continue to call individuals like Plaintiff, despite these individuals revoking any consent Defendant may have had to make such calls.

31. Defendant's corporate policy and procedures provided no means for Plaintiff to have his cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff from Defendant.

32. Defendant has a corporate policy of using an Autodialer or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

33. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

34. Defendant has numerous complaints across the country against it asserting that its Autodialer continues to call people who have revoked consent to be called.

35. Defendant knowingly employs methods and/or has a corporate policy designed to harass and abuse individuals.

36. Defendant knowingly employs methods that do not permit the cessation of or suppression of autodialed calls to Plaintiff's cellular telephone.

37. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. As a result of aforementioned tenacious collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy, stress, anxiety, worry, nervousness, embarrassment, emotional distress, aggravated illness, pain and suffering, and, strain to his marriage and familial relationships. Additionally, Plaintiff experienced loss of happiness, concentration, sleep, and, appetite. All of the abovementioned was caused by, and/or directly related to, Defendant's attempts to collect a debt allegedly owed by Plaintiff.

## COUNT I
### (Violation of the TCPA)

39. Plaintiff fully incorporates and realleges paragraphs one (1) through thirty-eight (38) as if fully set forth herein.

40. Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant to stop calling.

41. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Christopher H. Neyland

Christopher H. Neyland, Esquire
Mississippi Bar No.: 99216
Morgan & Morgan, P.A.
188 East Capitol Street, Suite 777
Jackson, MS 39201
Tele: (601)949-3388
Fax: (601)949-3399
Attorney for Plaintiff
CNeyland@ForThePeople.com


Jared M. Lee, Esquire
Florida Bar No.: 0052284
*(Motion for Leave to appear Pro Hac Vice forthcoming)*
Morgan & Morgan, P.A.
20 North Orange Avenue, 4th Floor
Orlando, FL 32801
Tele: 407-420-1414
Fax: 407-245-3484
Attorney for Plaintiff
JLee@ForThePeople.com
KVanBuskirk@ForThePeople.com